ROBERT MORRIS, The. See Case No. 8,896.

ROBERT MORRIS, The, (McLELLAND v.).
See Case No. 8,896.

---

## Case No. 11,894.

### The ROBERT NOBLE.

#### [1 Lowell, 57.] [1]

District Court, D. Massachusetts. April, 1866.

##### SEAMEN — WAGES — CONTRACT—VOLUNTEERED SERVICES.

A., a shipmaster, discovered a deposit of guano on an unclaimed island, and agreed with B. that the latter should charter a vessel, and assume the risk and expense of a voyage to test the value of the discovery; and that A. should command the vessel and conduct the adventure, and the two should share the profits in a certain proportion. B. chartered a schooner, and agreed to furnish a master, and the owners supplied the mate and three seamen. Several other persons were sent out in the vessel by B., and those of them who were seamen signed the articles, but only at nominal wages. C., the son of A., went out in the vessel, and upon her return, after the entire failure of the adventure, libelled the vessel for wages as an able seaman. It was proved that C. was represented by his father, upon the inquiry of the charterer, before the vessel sailed, to be a passenger; that he acted as such during the passage out; and that on the return trip he did all the duty of an able seaman. His name was signed to the ship's copy of the articles, as an able seaman; but when and by whom the name was written, excepting that it was after the copy had been put on board the vessel, did not appear. It was shown that C. knew of

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

the contract between A. and B., and of the charter-party. *Held*, that C. could not recover wages, because he had not proved the contract as alleged, and because his services must be taken to have been volunteered, with knowledge that the vessel was fully manned; and under such circumstances, would not be presumed to be worth more than the cost of his maintenance.

Libel of Francis F. Gregory, for wages for five months' service as able seaman, at twenty-five dollars a month. The schooner was hired by Mr. Nash, of Boston, for a voyage to the island of Trinidad, in the South Atlantic Ocean and back to Boston, at an agreed rate per month; the charterer to furnish the master, and the owners a mate and three seamen. Captain Gregory, the libellant's father, had discovered what he thought was a valuable deposit of guano, on the island of Trinidad, a fact which he reported to Mr. Nash; and it was agreed that Nash should charter the schooner, and assume all the risk and expense of a voyage, to test the value of the discovery, and Captain Gregory should contribute his knowledge—and his rights as finder as well as his time and skill in navigating the vessel,—and the two should share the net profits, in the proportion of two-thirds to Nash and one-third to Gregory. The charterer engaged several men, upon the recommendation of the master. Some were seamen, or had a knowledge of seamanship, and these signed the articles, but only at nominal wages, perhaps to signify that they were to do ship's duty if required. Their contracts were not wholly maritime, and it would seem they neither had nor expected to have any lien on the vessel for their wages. The chief motive for engaging all these men was for work at the island; and those who were not seamen were not expected to do any thing on board the vessel. The libellant had been an ensign in the navy; and his father testified that he should have taken him as mate, if his discharge from service had arrived in time. He came to Boston on the day the vessel sailed, and went in her. Mr. Nash swore that he asked Captain Gregory at the time, what his son was doing on board, and received for answer, that he was a companion for him, &c., and that he should make no charge for his services. The master did not remember any such conversation; but the judge thought the charterer more likely to be right, because his attention was attracted by seeing a person on board whom he was surprised to see, and was likely to remember the explanation given him. The libellant, though counted perhaps in the second mate's watch, did not do regular ship's duty on the passage out; did not take his turn at the wheel, nor stand his watches, but acted more like a passenger than a seaman, though he made himself useful by taking the sun, which is no part of a seaman's duty, and sometimes in other ways when there was occasion. On the ship's copy of the articles the name of the libellant appeared as seaman, with wages at twenty-five dollars a month.

The clerk who made the copy swore that this name was not on the paper when he made it out and gave it to the master, as the vessel was about to sail, and was not in his handwriting. Who made the signature of the libellant to this paper did not very clearly appear, nor when and where it was made. The libellant authorized his father to sign the articles for him, and he thought this was his father's signature; but the father did not appear at all certain of it, and thought he might have asked somebody to sign for him. There was no evidence of any vacancy to be filled by the libellant, but the contrary; this was the only person who was not engaged with the full knowledge and consent, either of Mr. Nash or the owners; and the only one whose signature was affixed after the paper left the counting-room of the owners; and the libellant was the only seaman engaged for the charterer, whose wages were put down in the paper at more than a nominal rate.

C. G. Thomas, for libellant.
J. Cutler, for claimants.

LOWELL, District Judge. The circumstances make out a strong case of concealment and underhand dealing, on the part of the master, and show that he never did make any bargain to fill a vacancy as the libellant expected and authorized him to do; and neither the articles themselves nor the oral evidence, show any such contract as is set up in the libel. The only doubt is concerning the extent of the libellant's knowledge of the facts; but whatever that may have been, his conduct shows that he either had not made such a contract, or that it was abandoned, for he did not do ship's duty on the outward voyage. There is some evidence that if the voyage had proved successful, instead of the disastrous failure which it was, the master and several of the men, with the second mate, would have stayed at the island, while the vessel made another trip. In this event, the master says he should have sent home the schooner in charge of the libellant, who is a good navigator. This statement, with the other circumstances, inclines me to believe that the libellant went out partly for the pleasure of the voyage, and partly with the hope of remunerative employment after the arrival of the vessel at the island. He has not proved the contract, and must recover, if at all, upon a quantum meruit. He certainly did full duty for about three months, with the master's consent, and this would, in most cases, be enough to make out his right to wages. But this case is by no means the usual one of the shipment of a seaman. The libellant knew the character of the adventure, and the general nature, at least, of the contract between his father and Mr. Nash; he knew that the vessel was fully manned without him, and that his employment, at wages, after the project was found to be a failure, would work a fraud either on the owners or

charterer. No doubt the master has. full power to bind the ship to all such mariners as he may choose to employ, but no case has decided that such an engagement would hold good where the seaman, a man of intelligence and education. was fully informed that the master would be guilty of a breach of duty in employing him. In this state of facts, I cannot hold that the ship is bound to pay for more than the actual benefit received; nor that the benefit exceeded the cost of the libellant's maintenance. If the libellant did any work on shore, he must look to Mr. Nash, personally, for payment. Libel dismissed.